**Cecil GUERARD, Plaintiff and Appellant,**

**v.**

**STATE of North Dakota, Defendant and Appellee.**

**Civ. No. 8944.**

Supreme Court of North Dakota.

July 9, 1974.

Murray, Mack, Moosbrugger & Leonard, Grand Forks, for plaintiff and appellant.

Vernon R. Pederson, Special Asst. Atty. Gen., State Highway Department, Bismarck, for defendant and appellee.

VOGEL, Judge, on reassignment.

This is an appeal by the plaintiff from a summary judgment dismissing his action.

The plaintiff, Cecil Guerard, alleged that he was the owner of real property described as Lots 15, 16, and 17 of Block 2, Budge and Eshelman's Third Addition to the City of Grand Forks, abutting on Dyke Avenue; that his property had free and convenient access to North Washington Street (U.S. Highway 81); and that in the year 1965 the State of North Dakota reconstructed the Washington Street underpass under the Great Northern tracks, thereby closing the intersection of Dyke Avenue and Washington Street. Guerard claims that as a result of the closing of this intersection he was damaged by the loss of the primary access to his business property from Washington Street onto Dyke Avenue, and brought this action to recover those damages. He demanded a jury trial.

The State in its answer denied that the property of the plaintiff had legal access to Washington Street; denied that there had been any compensable depreciation in the market value of the property or any compensable depreciation in the value of the business; denied that the business required that the property have free and convenient access to Washington Street by way of Dyke Avenue; denied that as a proximate result of the closing of Dyke Avenue the plaintiff had been deprived of his primary access to Washington Street; denied that as a proximate result of the closing of Dyke Avenue and the resulting loss of primary access to Washington Street the plaintiff has suffered damage to his business and property; and denied that as a direct result of the deprivation of primary access to Washington Street the volume of business has been and will be diminished.

The State moved for summary judgment on two grounds:

"I.

"That the closing of Dyke Avenue where it intersects U.S. Highway 81 [Washington Street] is a valid exercise of the police power and directly relates to the health and welfare of the traveling public;

"II.

"That the Legislature has limited as a matter of law the right of recovery for loss of access to properties abutting the highway and no others."

The trial court found that said property is not "abutting land" to North Washington Street and U.S. Highway 81, that the plaintiff was not vested with a legal "right of access," as defined in Section 24–01–01.-1, subsection 35, N.D.C.C., to his property not abutting on North Washington Street and U.S. Highway 81, and that consequently his alleged damages are not compensable. The court concluded that since the plaintiff was barred by the statute from recovery as a matter of law, there was no genuine issue as to any material fact, and granted the defendant's motion for summary judgment dismissing the plaintiff's action.

The State in its motion for summary judgment contended that the Legislature had limited as a matter of law the right to recover for loss of access to properties abutting the highway, and no others, by its definition of "right of access" in Section 24–01–01.1, subsection 35, N.D.C.C., which reads:

"35. 'Right of access' shall mean the right of ingress to a highway from abutting land and egress from a highway to abutting land."

This action is in the nature of an inverse condemnation proceeding. No part of the plaintiff's property was taken by the State. The plaintiff complains, however, that as a result of the reconstruction of the underpass and the approaches thereto, the intersection of Dyke Avenue with Washington Street was closed and the property of the plaintiff suffered consequential damages. It appears that Guerard's property was 175 feet from the improvement, and within one city block of it. It was therefore placed within a cul-de-sac.

Section 14 of the North Dakota Constitution provides:

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner. . . ."

Section 32–15–22, N.D.C.C., provides that the jury or court, if a jury is waived, must hear such legal testimony as may be offered by any of the parties to the proceedings and thereupon must ascertain and assess:

. . . . . .

"3. If the property, though no part thereof is taken, will be damaged by the construction of the proposed improvement, the amount of such damages; . . ."

The first question for our decision is whether the court or the jury has the duty to decide whether compensable damage has been caused to the Guerard property. We hold that this is a preliminary decision to be made by the court, as a matter of law.

The question of whether there has been a taking or damaging of private property for public use is a question of law. Breidert v. Southern Pacific Co., 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719 (1964); Brock v. State Highway Commission, 195 Kan. 361, 404 P.2d 934 (1965); Thomsen v. State, 284 Minn. 468, 170 N.W.2d 575 (1969).

This is not simply a question as to whether damage has occurred, but is a question as to whether the damage is of a type which is compensable. Whether it is compensable or not depends upon considerations which have been outlined in some of our prior cases.

We start with the basic proposition that some actions of governmental agencies, which incidentally affect private property, do not give rise to a right to damages. Such actions are sometimes de-

scribed as being within the police power of the State.

"Generally, the rule is that where the State or its agencies in the exercise of the State's sovereign power do an act which they are authorized to do, the fact that incidental injuries may accrue to an individual does not necessarily give that person a right of action. The private right must give way to the public right, and unless the law specifically gives the right of recovery then no recovery can be had." King v. Stark County, 67 N.D. 260, 271 N.W. 771 (1937).

However, under the North Dakota Constitution, Section 14, which permits recovery for damage to property as well as taking of property,

"It is not necessary that there be a direct injury to the property itself in order to create this liability. It is sufficient to warrant a recovery if there be 'some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.'" King v. Stark County, supra.

See also Wilson v. City of Fargo, 141 N. W.2d 727 (N.D.1966); and Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808 (1942).

Our cases establish a further limitation upon the right to compensation, applicable in cases involving highways and other easements.

"An abutting property owner is entitled to recover for injuries arising from interference with his easements of light, air, and access when such interference is caused by the lawful improvement of the street in a manner which could not have been reasonably anticipated at the time of dedication, and for which damages

have not been waived." City of Fargo v. Fahrlander, 199 N.W.2d 30 (N.D. 1972), quoting Cummings v. City of Minot, 67 N.D. 214, 271 N.W. 421 (1937).

And see Kenner v. City of Minot, 98 N. W.2d 901 (N.D.1959); and King v. Stark County, supra.

■ Whether the diminution of value was one contemplated by the parties to the original dedication is a question of fact. King v. Stark County, supra.

■ Similarly, whether the physical damage to the property, upon which the complaint is based, is caused by the improvement made by a public agency is a question of fact. Northern Pacific Railway Co. v. Morton County, 131 N.W.2d 557 (N.D.1964).

■ We have not had occasion to rule upon a cul-de-sac case, although Cummings v. City of Minot, supra, has many points of similarity. However, the rules involved in such cases would appear to be no different from those we have summarized above, except that it is conceivable that in a cul-de-sac situation the rule that an abutting owner may be entitled to damages for interference with his right of access if not reasonably anticipated at the time of dedication might be extended to owners of property whose lands abut upon any portion of the cul-de-sac. See Bacich v. Board of Control, 23 Cal.2d 343, 144 P.2d 818 (1943).

We hold that where the landowner owns property left in a cul-de-sac, he is not foreclosed from recovery solely because his property does not abut upon the improvement. He may be foreclosed from recovery if his damage is of a kind sustained by the public generally (even though it may be greater in degree) or of a kind contemplated by the parties at the time of the dedication of the street, or if damages were waived, or perhaps for other reasons. These matters are open for determination upon remand.

Compare State v. Tolliver, 246 Ind. 319, 205 N.E.2d 672 (1965), and Breidert v. Southern Pacific Co., *supra,* allowing recovery where circumstances are "exceptional" or impairment is "substantial" and different from that suffered by other owners; and Daly v. Illinois Central Railroad Co., 250 Iowa 110, 93 N.W.2d 68 (1958), and Fougeron v. County of Seward, 174 Neb. 753, 119 N.W.2d 298 (1963), denying recovery. All involve cul-de-sac factual situations.

■ Since the trial court granted summary judgment in favor of the State on the theory that in order to have a right to recover for deprivation of access the plaintiff must be an abutting owner—and we believe the plaintiff is not so limited—we cannot affirm the summary judgment of the trial court and must reverse and remand. This is not to say, however, that the landowner necessarily has a right to recover under the circumstances of this case.

Upon remand, the trial court, without a jury, may determine whether the claim of damages arises because of the disturbance of a right, either public or private, which the owner enjoys in connection with his property and which gives it additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.

If the court determines that the facts alleged create such a right of compensation, then the court may submit to a jury the further questions of whether the damage was caused by the public improvement and whether the kind of public improvement creating the damage was within the contemplation of the parties at the time of the dedication of Dyke Avenue, and the amount of compensable damage, if any.

■ This opinion is not intended to reverse the general rule that an improvement which merely requires a circuity of travel to reach a point previously reached more directly does not create a compensable right to recover on the part of the owner of the property so reached. Diversion of public traffic does not create a right to compensation. Jamestown Plumbing & Heating Co. v. City of Jamestown, 164 N.W.2d 355 (N.D.1969). Other cases are collected at 26 Am.Jur.2d Eminent Domain, Section 205.

Reversed and remanded for further proceedings consistent with this opinion, with the suggestion that the parties be allowed to amend their pleadings and file supplementary affidavits if they choose to do so.

ERICKSTAD, C. J., and PAULSON, J., concur.

JOHNSON, J., not being a member of this Court at the time this case was heard, did not participate.

KNUDSON, Judge (concurring).

I concur in the syllabus and in the reversal of the summary judgment only as I am of the opinion that summary judgment is not appropriate in eminent domain proceedings.