Peter A. KRAFT, Plaintiff and Appellee,

v.

Pat MALONE, Acting Mayor of the City of Linton, a Municipal Corporation, The City Council of Linton, North Dakota, and The City of Linton, North Dakota, a Municipal Corporation, Defendants and Appellants.

Civ. No. 9993.

Supreme Court of North Dakota.

Dec. 22, 1981.

Frank J. Wikenheiser, of Wheeler, Wolf, Peterson & McDonald, Bismarck, for plaintiff and appellee.

F. C. Rohrich, Linton, for defendants and appellants.

VANDE WALLE, Justice.

The City of Linton (hereinafter "Linton") appealed from a judgment of the district court, Emmons County, awarding Peter Kraft damages against Linton as a result of a taking of private property for public use without just compensation. We affirm in part but remand for modification of the judgment.

Kraft applied for a permit to build a house upon unplatted land which he owned within the city of Linton. Linton effectively denied Kraft's request because a portion of the land upon which he sought to build is a drainage ditch. The trial court ruled that Linton, by denying Kraft the building permit, had taken his land for public use without compensation. The trial court ordered Linton to pay Kraft $3,300 for the land.

Linton raises five issues on appeal:

1. The trial court should have granted Linton's motion for dismissal because there was no claim upon which relief could be granted which entitled Kraft to damages for inverse condemnation.

2. The trial court should have granted Linton's motion for dismissal because inverse condemnation does not apply.

3. Even if inverse condemnation did apply, Kraft would be estopped from asserting his claim.

4. The trial court should have granted Linton's motion for dismissal because Kraft did not comply with Linton's building and zoning ordinances when he applied for a building permit.

5. The evidence does not justify the judgment of $3,300.[1]

The first issue is whether or not the trial court properly denied Linton's motion to dismiss. Linton moved for dismissal, presumably under Rule 41, N.D.R.Civ.P., at the close of Kraft's case. Linton claims that dismissal was warranted because "there was no claim upon which relief could be granted." The motion to dismiss, while appearing to use the words of Rule 12(b)(5), N.D.R.Civ.P., was made at the close of Kraft's. presentation and therefore should be treated as a motion under Rule 41(b): "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Rule 41(b), N.D.R.Civ.P. To determine whether or not the trial court erred we look at the evidence in the light most favorable to the party

against whom the motion was made. After review of the evidence we decide whether or not the trial court abused its discretion in granting or denying a Rule 41(b) motion. *Soby Construction, Inc. v. Skjonsby Truck Line*, 275 N.W.2d 336, 341 (N.D.1979).

Linton claims that the motion for dismissal should have been granted because Kraft failed to describe the property in question, prove his ownership, or prove the value of the property. Evidence was presented on all three issues. While it was up to the trial court to determine the sufficiency of the evidence, viewing it in the light most favorable to the party against whom the motion is made leads us to the conclusion that Kraft did show that he had a right to relief. Therefore, we do not believe that the trial judge abused his discretion when he denied Linton's motion to dismiss.

Linton's second issue is that the trial court should have granted the motion to dismiss because inverse condemnation does not apply. We do not agree. Article I, Section 16, of North Dakota's Constitution provides that "Private property shall not be taken or damaged for public use without just compensation . . ." Linton is mistaken when it claims that "before the City would be liable [for inverse condemnation], Kraft would have to prove that his property was diminished in value." In *Eck v. City of Bismarck*, 283 N.W.2d 193, 197–198 (N.D.1979),[2] we said: "A mere reduction in the market value of property, how-

---

1. There were other issues available to the parties which might have had an impact upon the trial court's decision; however, they were not litigated. We are limited to the issues litigated below and the arguments presented upon appeal. This case does not present the question of the constitutionality or the application of flood plain zoning ordinances. Nor does it present the question of liability of Linton and other public entities for construction which may have increased runoff and affected Kraft's property. See *Hager v. Devils Lake Public School District*, 301 N.W.2d 630 (N.D.1981). Nor is the Linton zoning ordinance which requires the subdivision of land before a building permit may be granted at issue. We do not speculate upon the effect which one or all of these issues might have made if they had been raised. The only question before us is the

result of Linton's refusal to grant a building permit in this particular situation. Our decision to affirm the judgment of the trial court does not mean that *any* denial of a building permit results in a taking or that a denial of a building permit is a taking per se.

2. *Eck v. City of Bismarck* was before us twice. Both appeals were based upon Bismarck's refusal to rezone Eck's land from agricultural to residential. In the first decision [283 N.W.2d 193 (N.D.1979)], which we refer to as *Eck I*, the case was remanded to allow Eck to amend her complaint. The second decision [302 N.W.2d 739 (N.D.1981)], which we refer to as *Eck II*, affirmed the trial court's dismissal of Eck's action.

ever, cannot serve as the basis for an action for inverse condemnation." Kraft's complaint is that Linton has done more than just diminish the value of his property. He claims that Linton has taken his property without compensation by denying him all reasonable use. Property can be subjected to a public use and not require compensation when that use is exercised under the police power of the government. *Soderfelt v. City of Drayton*, 79 N.D. 742, 59 N.W.2d 502 (1953). "The State, acting through its police power, has broad authority to enact land-use regulations without compensating a property owner for the restrictions placed on the use of his property." *Eck I*, 283 N.W.2d at 197. Land-use regulations, however, "must bear a reasonable relationship to a legitimate governmental purpose and must not be arbitrary or capricious *nor deprive a property owner of all or substantially all reasonable uses of the zoned land.* Eck II*, 302 N.W.2d. 739, 741 (N.D.1981). [Emphasis added.] Here, as we shall discuss, Linton has "taken" Kraft's property by depriving him of all reasonable use.

Linton attempts to interpose our decision in *Eck I* to defeat Kraft's claim. There are, however, important differences between *Eck I* and Kraft's claim. *Eck I challenged* the validity of governmental land-use regulations when Bismarck refused to rezone her land. Eck claimed that the refusal was a taking of property without just compensation. The holding of *Eck I* was that the appropriate action in that situation was one for declaratory action and not inverse condemnation. Here, Kraft is *relying* upon land-use regulations already enacted. His land is zoned " 'A' Residential District," and he attempted to use his land according to that regulatory scheme. According to Linton's Building and Zoning Code the uses which are permitted in this zone are: one-, two-, and multi-family dwellings; churches, schools, and museums; parks and playgrounds; and nurseries and greenhouses. Kraft applied for a permit to build a residence. Although Linton has never formally denied the application, the trial court found that it never would be granted. Linton's counsel, at oral argument, contended that

Linton has only delayed Kraft's application. Counsel admitted, however, that the practical effect was denial. It may appear that Kraft is left with land which may be used only for a church, school, museum, park, playground, nursery, or greenhouse. Kraft, however, never would receive a building permit for any other building because the reason for Linton's denial was to prohibit all construction which would obstruct the drainage ditch. Kraft's only possible use is anything which does not require a building permit. Therefore, the only use left for Kraft is for a park or playground. Thus the City, by denying the building permit, has forbidden substantially all use of the regulated property. Kraft is not even able to use his land agriculturally, contrary to the situation in *Eck I* and *Eck II*.

Linton has also taken Kraft's property for a public use. It is apparent that the City has either converted or expanded the use of Kraft's land as a drainage ditch. Its desire to continue to do so is the basis of its denial of Kraft's building permit. Linton would approve a building permit only if Kraft would construct or pay for the construction of facilities that would substitute for the drainage ditch on his land. Through these actions Linton has effectively taken Kraft's land and committed it to public use.

■ "The question of whether there has been a taking or damaging of private property for public use is a question of law." *Guerard v. State*, 220 N.W.2d 525, 527 (N.D. 1974). Questions of law are fully reviewable by this court. *Park View Manor v. Housing Authority*, 300 N.W.2d 218, 224 (N.D.1980). We do not believe that the trial court erred by denying Linton's motion to dismiss or by deciding that Linton had taken Kraft's property in violation of Article I, Section 16, of the North Dakota Constitution.

■ Linton's third issue is that even if inverse condemnation did apply Kraft would be estopped from asserting his claim. The basis for Linton's estoppel argument appears to be that Kraft was aware that

the property was a natural drainage ditch when he purchased it. Kraft also built a small dike between his existing residence and the drainage ditch in order to protect his house from flooding, should the ditch overflow. We fail to see, and Linton does not explain, how this would act as an estoppel.

Linton also cites Section 61–01–07, N.D.C.C.,[3] for the proposition that the City would be guilty of a misdemeanor if it permitted Kraft to build in the drainage ditch. Section 61–01–07 prohibits obstructing any ditch or diverting the water from its natural course. Kraft maintains that his building plans would not obstruct the flow of water in the ditch. At trial Kraft introduced building plans which he testified were designed to prevent obstruction of the ditch. Linton's city engineer testified that Kraft's planned construction would obstruct the ditch and that the construction could not be permitted. We agree with the trial court's finding that the City's reliance upon Section 61–01–07 was unconvincing:

> "Linton will prohibit any use of the property that will result in any grade change, topography change, or any obstruction, however slight, which may affect the drainage. It will do so, not because of Section 61–01–07, but because it needs this drainage to carry surface water across the property."

Linton also claims that it has title in the drainage ditch by prescription under Section 47–06–02, N.D.C.C. The trial court rejected this claim, and we agree. Linton has not proved the elements for a prescriptive title. There is nothing in the record which would indicate that Linton occupied the ditch adversely to Kraft.

Linton's fourth issue is that the trial court should have granted its motion for dismissal because Kraft did not comply with the Building and Zoning Code when he applied for a building permit. Linton apparently is referring to the requirement that "all applications for building permits shall be accompanied by a plat, . . . showing the actual dimensions of the recorded lot to be built upon, . . ." This appears to require that the land upon which a building is proposed be within an approved subdivision, i.e., platted. The intent of the ordinance is to prevent the building of structures upon land which has not been subdivided according to State statutes and local regulations. See Chap. 40–48, N.D.C.C. When building permits are issued for lots in recorded subdivisions one of the problems encountered here, describing the lot, is avoided. Linton, however, apparently has not required conformance with this ordinance in the past as to Kraft's existing house, located near the site of the proposed house. If the ordinance had been enforced the land in question undoubtedly would have been part of a subdivision plat. Even if it had been subdivided, however, the statements of Linton make it plain that it would not have approved Kraft's application for a building permit. Therefore, the argument by Linton that Kraft did not conform to Linton's Building and Zoning Ordinance is without substance.

Linton's fifth issue is that the evidence does not justify the judgment of $3,300. The amount of damages is an issue of fact. Findings of fact are upheld unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P. "[O]n appeals subject to Rule 52(a), we review the entire evidence to determine whether we are left with a definite and firm conviction that a mistake has been made in a determination of a fact issue. . . . It is a settled rule in this state that an award in a condemnation case will be upheld if it is within the range of testimony of witnesses." *State v. Livingston*, 270 N.W.2d 556, 557 (N.D.1978). The trial court decided that although the testimony at trial as to value was meager, the exhibits and testimony at trial were sufficient to form the basis of the $3,300 award. We agree with the trial court that the evidence of value at trial was meager. However, we are not left with a definite and firm convic-

---

**3.** Section 61–01–07, N.D.C.C., provides:

> "If any person illegally obstructs any ditch, drain, or watercourse, or diverts the water therein from its natural or artificial course,

he shall be liable to the party suffering injury from the obstruction or diversion for the full amount of the damage done, and, in addition, shall be guilty of a class B misdemeanor."

tion that a mistake was made in the determination of the issue of damages. The award of the trial court was within the range of the testimony of the witnesses.

█ We affirm the trial court's decision that the City of Linton, by denying Kraft's application for a building permit, is required to pay $3,300 to Kraft for the entire lot upon which Kraft sought to build. We remand the case, however, for modification of the judgment to specifically describe the property, the title to which Kraft is to convey to Linton. The trial court may either prepare findings and order for judgment based on the current record, if it determines the evidence adequate and credible, or the trial court may, if it determines it to be necessary, hold a new hearing to ascertain the legal description of the property to be conveyed by Kraft to Linton.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.